Good morning. Lawrence Cadway, appearing for Michael Cremin. Mr. Cremin was approved by an independent administrator for own occupation disability benefits. At the end of two years, that same administrator approved him for any occupation benefits. He is likewise approved for Social Security disability. The claim was then purchased or sold to Liberty Mutual, which has a structural conflict, and acted very promptly to reverse the decision of the independent administrator who had found Mr. Cremin disabled for any occupation. So on appeal, we've raised two issues. The first is the failure of the documents to delegate authority, to delegate discretion, to Liberty Mutual. And the second is the failure of Liberty Mutual, following remand, to allow Mr. Cremin an administrative appeal of its new adverse benefits decision. So if we turn to the first issue, this is really just a matter of having the right paper trail. The reserve buyout agreement says Liberty Mutual has discretion. There's a place there for the signature of the Employee Benefits Committee. There is no signature. But the question that we raise is, did the Employee Benefits Committee authorize anybody to sign that? Kennedy. Go ahead. What was the district court's ruling on that question? I don't think the district court expressly ruled on whether the Employee Benefits Committee expressly authorized anybody. What do you mean by expressly ruled? Did it like, you know, generally rule or make any kind of ruling? I would need to go back and find the exact language to give it to you correctly. Well, did you raise the issue before the district court? Yes. That the documents weren't signed? Well, there are two issues. One is that the documents weren't signed. But I think that the bigger issue, because that gets into whether or not this declaration should have been objected to, that sort of thing, I think the bigger issue is that you have to have authority to sign. So if we assume that somewhere there's a signed document, which maybe there is, who knows, but somebody has to have authority to sign it. And the way that you get authority from the Employee Benefits Committee is they have a meeting, they pass a resolution, they say this is what we're going to do. And what was the district court's ruling on that issue, on authority? Let me see if I can turn to that quickly. Well, the district court says that the plaintiff conceded in the earlier case that the plan granted discretion to the defendant. And then it says the plan documents expressly provide the discretion afforded can be transferred to a designee, which they really don't. And then she relies on the reserve buyout agreement. And so that's all at page 20. But I don't think that the concession in the first case applies. And, of course, we brief that because counsel decided to argue for de novo review in a different fashion in the first case. And he got de novo review. But doesn't the plan give authority to interpret the plan to the Employee Benefits Committee? Yes. Does that committee authority to designate representatives to carry out its responsibilities? It does. And doesn't the buyout agreement between McKesson and Liberty provide that Liberty has the sole discretion to construe the terms of the plan and to determine benefits eligibility? It does. But I think there are two points that are being missed. The first is that if you look at 8.1 of the plan, it gives the Employee Benefits Committee discretion to hire people to do work for it, but it does not authorize them to transfer that discretion to those people. So you'd have to imply that. And I don't know. Maybe you would. Maybe you wouldn't. But I think the bigger issue is that we have the minutes from their meetings. They're in the excerpts from the record starting, I think, at about page 119. And there is no resolution, there's no meeting minute, that mentions this reserve buyout agreement at all. So even if they can delegate it, they act as a committee, so they need to have a resolution or some action by which they do delegate. And that's what's missing here. So, you know, you can, even if you imply that all these things were signed, somebody has to be authorized. The committee has to have a resolution, a meeting where they say, we're going to delegate this discretion to Liberty Mutual, and that's what's missing in the record. Your argument is that Liberty can decide, but it has no discretion. In other words, everything is reviewed de novo, always. Is that your argument? My argument is that under this plan, the discretion remains with the Employee Benefit Committee. That's the only place where any discretion has been delegated under these documents. All right. Maybe you can clarify for me again. Who do you think makes the decision in this case, in the first instance? If we assume that the Employee Benefit Committee gave that right to Liberty Mutual, because we don't, because there's nothing that the Employee Benefit Committee recognizes, there's nothing from the Employee Benefit Committee that mentions Liberty Mutual at all. So under the plan document, the claim should have been decided by the Employee Benefit Committee. Are you saying, look, are you saying that that's, that nobody made the decision? Are you saying we should review Liberty Mutual's decision de novo because it wasn't given discretionary authority? Which one of the two? All right. I think, first of all. Well, just can you, can you just answer the either-or question? All right. Are you saying that nobody made a decision here? Yes. Or are you saying that Liberty Mutual made the decision, but it lacked discretionary authority, therefore review of Liberty Mutual's decision has to be de novo? I think that if you look at the documents carefully, that nobody has, that Liberty Mutual has no authority to make any decision. That authority all remains with the committee. But we did not raise that issue below. So if you look at it that way, then you'd say, well, we should have a de novo review. So what difference does it make? Well, I don't think, from our standpoint, I don't think it makes a particular difference, except that the district court gave discretion to Liberty Mutual, which it should not have done. And if you don't give discretion to Liberty Mutual, then it doesn't really matter one way or another. You're going to have de novo review in the district court. Okay. Can I ask you a question? Sure. If we're going to have de novo review here, what is the evidence that's untainted by the doctor who you've now abandoned that supports this decision? Untainted evidence. Sure. You would have the decision of the first plan administrator, you'd have the decision of the Social Security Administration, you'd have the report of Dr. Morse. Didn't Dr. Morse rely in part on the other doctor? No, I don't think there's a substantial reliance there. The issue of Dr. Morse's report was in 2006, based on a 2006 evaluation with respect to a disability issue in 2002. So what light does it possibly shed? Well, what it does is, and what's important is the testing which she did, which shows the anxiety level, which is kind of a continuing anxiety. But I think the other critical piece of evidence is that what Dr. Gershenhorn says is there is some permanent damage from the heart attack. It's something that could cause this fatigue and concern. And he can't say, he can't measure it. He can't say, well, you know, but there is an objective finding which does support the disability claim. And, you know, I mean, that's... Disability claim for fatigue? Is that it? Well, it's related, it's basically, it's an anxiety which arises from an inability to do work, and it's related to, I think what Dr. Gershenhorn said is basically it's related to a fatigue and anxiety in his words. But I think the real, there's also a lot of evidence in the record from people who saw this man before and after, observed the changes in him. There's surveillance which shows him basically homebound for all practical purposes. So there is, I think, a fair bit of evidence in this record from which, even disregarding the fact that, unfortunately, Dr. Corrales turned out to be a felon, which makes him rather hard to rely upon, you know, there is certainly evidence from which you could conclude that this man is disabled. I mean, you know, the opinions are, you know, picking out the evidence that they want to support their authority. But why, you know, do we totally disregard what Mr. Kremen says? Are we going to totally disregard what his cardiologist says? I mean, I think, you know, there's enough here that it should be heard in a, you know, fair, impartial, de novo manner. And the evidence presented and whatever happens, happens. So you think the district court should have a trial de novo? Yes. Okay. And I think, if I might just add one other point, is that there was a suggestion in the briefs that, well, the company can amend the plan. There's no evidence that it did amend the plan. But I'd like to point out that the money in this plan comes from the employees, not from the company. This started out as an entirely employee-funded plan. And I think, you know, I think that that kind of should be. So I think that you have to be a little bit more careful in making sure that the paperwork is right in handling the employees' money. And I'll reserve the balance of my time, if I may. Okay. Ms. Handelman. Good morning, Your Honors. I'm Sue Handelman, appearing on behalf of the Plan and Liberty. I'd like to begin where my opponent left off, and that was with a question from Your Honor, Judge Rustani, about whether it is my opponent's belief that the claimant gets a trial de novo in the district court. This case has been to the district court twice, and a trial de novo is not what is provided by the law under ERISA. Judge Reimer and Judge Tashima, in referring to something that Judge Tashima previously wrote in the SAFL case, made it quite clear that the district courts are not in the business of deciding ERISA claims. ERISA claims are to be decided by the administrator. And there are certain elements that a district court may review, but claim decisions and trials about whether a person is or isn't disabled belong with the claim administrator. Now, I'd like to go through. Well, what is your understanding of the standard that was applied in this case by, I think, Judge Wilkin? Judge Wilkin applied a review. She applied abuse of discretion review, but it was tempered by skepticism. It was tempered by this Court's decision in Abadi and by the U.S. Supreme Court's decision in Metlife v. Klan. And there couldn't be a more perfect example of a trial judge applying exactly the standard that is required. And her decision was based entirely on the record that was before the plan, right? There was no new evidence. That's right. Introduced at the district court. Just a review of the administrative record, yes. There's no new witnesses, no new evidence, no trial with new facts. However, it must be remembered that this case was before the trial judge twice. Not once, but twice. Can I ask, if somebody is entitled to de novo review, can they have de novo review without a trial, and it would just be reweighing of the evidence that was before the judge? Is that what you think of when you think of de novo in this context? In this context, the question is looked at as whether or not the individual, whether or not the administrative record reviewed de novo supports the decision that the trial court or, sorry, that the administrator made. The question here is review on the record and the issue is whether it's with some kind of skepticism or de novo. Correct. That's right. And this case has been through two kinds, been through review twice, once de novo, at which point the trial judge found that there was not enough evidence to support, Dr. Corrales in the record, that even at that time there was not enough evidence in the record for the court to make a decision one way or another that the individual was incapacitated. By the time it came up for review a second time, the claimant had stepped away from the basis of his disability claim. Any fair review of this record will reveal that the basis for the decision in the first place that the man was disabled was a psychological, psychiatric disability supported by Dr. Corrales. The 1996, we don't have the social security administrator's decision in the record, but at that time we have what is available and the only thing that suggests any disability was not a cardiac disability. The man had gone back to work after a heart attack and worked 10 years. The issue was, was he psychologically, psychiatrically disabled because of stress? And the evidence in the record supporting a disability was Corrales and a statement that he was disabled. Well, now the Corrales evidence is gone. The man was convicted of fraud, and as my opponents just mentioned, they're not relying on him. And so at this point the evidence is weaker that he was disabled than it was in 1996. And furthermore, as the record developed and we got additional information, it turned out that he wasn't disabled in the meaning of the policy since 2002 when the benefits were denied. Now, do the planned documents in the record establish discretionary authority on the part of liberty? I'd like to address that by addressing a couple of questions that the court already asked my opponent. The argument made that the document wasn't signed, that there is somehow a lack of authority, or that there are minutes missing, none of those arguments were raised below, not one. Had there been an evidentiary objection to the planned documents which were supplied, according to the record, not once, but three different times, then those issues could have been addressed. What we have is the opposing party conceding, agreeing before the district court, and having the district court rely on the fact that we agree that the plan affords discretion to liberty. So that wasn't an issue. There was never a time to add minutes to the record. You're talking about the first time around. First time around, right. That's right. And it was fully addressed at that point. The court ---- But the second ---- but by the time of the second hearing before the district court, the law had changed. By the time ---- that's correct. As far as the standard of review was concerned, the law had changed. A body and Glenn had been issued. So this time, instead of a conflict resulting in de novo review, the conflict was taken into account, weighed, and the skepticism applied, as the law requires. Now, one other point I'd like to make about the records. Our brief for five pages goes on to establish exactly how the material that is in the record gives liberty discretionary authority. And we cite a case which is we contend on all fours, the ITT case, establishing that the documents we have, including a plan which allows itself to be amended, several amendments of the plan, a reserve buyout agreement, et cetera, which incorporates the plan, all those documents do, in fact, if you were to review the record, give liberty discretionary authority. There was no response in the reply brief. Not one. Not to the ITT case and not to the analysis of how the discretion is afforded, other than, well, the document is unsigned and that's about the size of it. He said this morning that the district court's statement in the opinion that the documents expressly provided for discretion was incorrect. Is that true? That is not true. The reserve buyout agreement itself specifically states that liberty is given discretion. And the reserve buyout agreement incorporates by reference the plan, and therefore the documents expressly provide the discretion to liberty. Now, one last thing. My opponent did not address any of his arguments regarding whether Mr. Kremen should have been given an appeal from his appeal, but I will ‑‑ I want to have one more last word on the concept that the plan documents are in some respect defective that are in the record. This case was before the district court, as Your Honors know, in 2005 and then again in 2007. And the district court in the first case went through the standard of review where it was accepted that the documents provided discretion to liberty. And the only comment, the only comment in the entire record, and we've got several volumes of excerpts of record and supplementary excerpts of record, there is one half sentence in one brief from the other side which suggests that there may be a problem with the plan documents. And it was in the 2008 case, there is a half sentence that says, baldly, the buyout agreement does not make liberty the plan administrator, and it would be a manifest breach of duty for an independent, unconflicted plan administrator to appoint a biased conflicted party such as liberty. The half sentence that says the buyout agreement does not make liberty the plan administrator is the only mention in all of the papers filed with the district court about any suggestion that there is a problem with the plan paperwork. And that was absolutely unsupported by authority, was not argued in any depth whatsoever, wasn't developed by any citation to the plan documents. It was simply a half sentence, which we have briefed as being insufficient for the other side to seize on at this point, to suggest that this Court should reverse, and as Judge Rastani pointed out, to what end? To what end? To de novo review? Well, this case has been through de novo review, and the evidence is now weaker than it was when it went through de novo review. So based on our briefing in this case, based on the comments that Your Honors have heard this morning from both sides, McKesson and Liberty would strongly urge Your Honors to affirm the district court's fair and full – the district court's decision and to find that Liberty has gone far beyond a full and fair review. It's had a full and fair review and a full and fair review a second time. Thank you. Okay. Thank you, Ms. Handelman.  Thank you. Yes. The paragraph 8.1 of the plan does not authorize the Employee Benefits Committee to delegate discretion to anybody else. There's a list of amendments to the plan in the record at 151, 152. It doesn't mention Liberty Mutual. So – but let's assume that Liberty has discretion. And now we get to the second point, which is they make a new decision in 2006, and we say, okay, new adverse benefit decision, we want to take our administrative appeal. And they say, no, you can't. Well, you didn't bring that up in the district court either. Well, we did. It's the district, and it's in our reply brief where the discussion of it was. The district court recognized it from the brief. And without that appeal going forward, nobody has any idea what the evidence would ultimately be. Well, actually, wasn't this just part of the prior appeal? I mean, the district court said the prior appeal got, you know, the district court messed up because of the Mencken, I've forgotten, I may have mispronounced his name, report, which was the ambiguous. And so the district court said, go back and unravel the lack of clarity, which happened. So apart from everything else, it seems to me this was simply a continuation of the prior appellate process in the district court's own remand. Well, except the district court doesn't say it's remanded on appeal. The language that it's remanded on appeal keeps getting added by the plan. What the district court did was the district court remanded for further investigation, following which the court found in the 2004 case that defendants' reliance on undisclosed materials in making its final 2002 decision prevented plaintiff from meaningfully participating in the appeals process. So she's going back. But once you remand it, then there's a new decision, which is what the district court reviewed. So if there's a new decision under the regulations, that is a new adverse benefit decision. All right.  Mr. McCloud. Next, please. Well, I mean, it's just. Thank you, Your Honor. Thank you, counsel. The matter just argued will be submitted, and we'll next hear argument in Graza v. IGT. Mr. McConnell, please. Thank you, Your Honor.
judges: Restani, Rymer, Tashima